## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNA M., in her individual capacity, and as parent and natural guardian of Plaintiffs K.J.V. and K.A.V., minors, | ) ) ) ) | Civil Action No. 23-1378 |
| Plaintiffs, | ) ) | District Judge J. Nicholas Ranjan Magistrate Judge Maureen P. Kelly |
| v. | ) ) | Re: ECF No. 48 |
| COMMONWEALTH OF PENNSYLVANIA; ADDIE STONE; DENISE DYMOND; ROXANNE CRIPE; SAM COLLINGS; and JOHN/JANE DOE, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

Pending before the Court is a Motion to Dismiss, ECF No. 48, filed by Defendants Addie Stone ("Stone"), Denise Dymond ("Dymond"), Roxanne Cripe ("Cripe"), and Sam Collings ("Collings") (collectively, the "County Defendants"), ECF No. 48, requesting that Counts I, II, and III of the Second Amended Complaint, ECF No. 43, be dismissed with prejudice.

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss be granted in part and denied in part.

### II.    REPORT

#### A.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jenna M. is the parent and natural guardian of minor Plaintiffs K.J.V. and K.A.V. ECF No. 43 ¶ 6. Plaintiff Jenna M. shares custody of the two minors with their biological father, John V. Id. ¶ 16.[1] Jenna M. and John V. are engaged in child custody proceedings relating

---

[1] Jenna M. resides in Columbiana County, Ohio. Id. ¶ 5. John V. resides in Beaver County, Pennsylvania. Id. ¶ 17.

to K.J.V. and K.A.V. in the Court of Common Pleas of Beaver County. Id. ¶ 18. See also Jenna M. v. John V., Court of Common Pleas of Beaver County, 2021-10452.

Defendants Stone, Cripe, and Collings are caseworkers employed by Beaver County Children and Youth Services ("CYS"). ECF No. 43 ¶¶ 11, 13-14. Defendants Dymond and John/Jane Doe ("Doe") are supervisors employed by CYS. Id. ¶¶ 12, 15.

Plaintiffs allege that in 2018, while Jenna M. was pregnant with K.A.V., CYS "made a determination indicating abuse" by John V. relating to another one of his children. Id. ¶ 18. As a result, K.J.V. was designated "high risk" for abuse by CYS. Id.

On August 25, 2022, John V.'s adult son, Nathan V., grabbed K.J.V. and shook him, which resulted in bruising to K.J.V.'s arm and shoulders. Id. ¶ 21. After K.J.V. reported the incident to Jenna M., she reported the abuse to CYS and/or Stone and provided pictures of the bruising. Id. ¶ 22. During a forensic interview, K.J.V. stated that Nathan V. grabbed him by the arm and shook him. Id. ¶ 23. At that time, Stone stated that based on K.J.V.'s aforementioned statements, abuse was indicated. Id. ¶ 24. Soon thereafter, Stone, without explanation, changed her recommendation and concluded that the allegations of abuse were unfounded. Id. ¶ 25. On September 27, 2022,[2] Jenna M. contacted Stone's supervisor, Dymond, and complained about Stone's conduct. Id. ¶ 28.

For the next several months, Jenna M. continued to make reports of John V.'s abuse of K.J.V. and K.A.V. Id. ¶ 29. She also sent pictures of bruises on the minor Plaintiffs to Stone, Dymond, Cripe, and/or CYS. Id. No investigations were conducted. Id.

On October 30, 2022, K.J.V. told Jenna M. that while visiting his father, a family member shoved him onto his back, which resulted in cuts. Id. ¶ 31. Jenna M. took K.J.V. to the

---

[2] The Complaint states that this date is September 27, 2023, but the chronology of the Complaint indicates that this is a typographical area, and that the correct date is September 27, 2022. ECF No. 43 ¶ 28.

hospital and reported the incident to CYS. Id. ¶¶ 32-33. She also provided CYS and/or Cripe with photos of the cuts. Id. ¶ 32. CYS determined that the allegations of abuse were unfounded. Id. ¶ 34.

On November 10, 2022, John V. grabbed K.J.V. by the arm, bruising K.J.V.'s arm. Id. ¶ 35. K.J.V. reported the abuse to Jenna M. Id. Jenna M. reported this incident to CYS and Cripe; she also provided pictures. Id. ¶ 36. Jenna M. took K.J.V. to the hospital for an evaluation. Id. ¶ 37. Around this time, Jenna M. began making complaints about the conduct of Stone, Cripe, and Dymond to CYS and to Pennsylvania Child Welfare Services. Id. ¶ 38. Cripe and/or CYS concluded these allegations of abuse were unfounded. Id. ¶ 39.

On or about February 17, 2023, John V. grabbed K.A.V. by the neck and shook K.A.V., leaving marks on K.A.V.'s neck. Id. ¶ 41. K.A.V. told Jenna M. about the abuse. Id. Jenna M. reported the incident to CYS and Cripe. Id. ¶ 42. Jenna M. provided pictures of the bruises and a recording of K.J.V.'s statement about the incident CYS and/or Cripe. Id. Jenna M. took K.J.V. to the hospital for an evaluation and reported the incident to the Ohioville Police Department. Id. ¶ 43.

Jenna M. also reported to CYS, Stone, Cripe, and/or Dymond that John V. was failing to provide necessary medications to K.J.V and K.A.V. while they were in his custody, including failing to provide K.A.V.'s inhaler and asthma medications at the prescribed times. Id. ¶¶ 47-48. In March 2023, as a result of John V.'s failure to provide K.A.V. with necessary medications, K.A.V. was hospitalized for several days at Akron Children's Hospital for breathing problems. Id. ¶ 49. Staff at Akron Children's Hospital reported John V.'s medical neglect to CYS. Id. ¶ 50. K.A.V.'s pediatrician also reported John V.'s medical neglect to CYS. Id. ¶ 51. CYS did not begin investigating the medical neglect allegations until June 2023. Id. ¶ 52.

Four different caseworkers have since been assigned to the investigation over about six months. Id. ¶ 53. Plaintiffs allege that Doe, in his or her capacity as a supervisor employed by CYS, was responsible for overseeing the caseworkers assigned to the medical neglect investigation. Id. ¶ 54.

Plaintiffs initiated this action by filing a *pro se* Complaint on July 31, 2023. ECF No. 1. Plaintiffs filed the counseled Second Amended Complaint (the "Complaint") on March 14, 2024. ECF No. 43.

In the operative Complaint, Plaintiffs assert a total of four claims. Plaintiffs bring three claims against County Defendants arising out of the aforementioned conduct.

In Count I of the Complaint, Plaintiffs bring an equal protection – class of one claim against County Defendants. Id. ¶¶ 76-87. They allege that the County Defendants failed to perform proper investigations of the reported child abuse and/or ignored credible evidence of abuse – but that County Defendants do not fail to perform proper investigations or otherwise act appropriately on child abuse allegations of abuse for similarly situated individuals. Id. ¶ 78. Plaintiffs also allege that similarly situated individuals do not experience delays in CYS investigations of medical neglect or such frequent reassignments of caseworkers. Id. ¶ 83.

In Count II of the Complaint, Jenna M. brings a retaliation claim against County Defendants. Id. ¶¶ 88-94. She alleges that County Defendants failed to perform proper investigations of the reported child abuse and/or ignored credible evidence of abuse in retaliation against her for making complaints and reporting them to Pennsylvania Child Welfare Services. Id. ¶ 90. She also alleges that the investigation into medical neglect was, and is, subjected to substantial delays and County Defendants often reassigned caseworkers in retaliation for complaints made to Pennsylvania Child Welfare Services. Id. ¶ 91.

In Count III of the Complaint, K.J.V. and K.A.V. bring a "retaliation – familial affiliation" claim against County Defendants. Id. ¶¶ 95-102. They allege that, as a result of Jenna M.'s conduct, County Defendants retaliated against them in the same manner detailed in Count II. Id. ¶¶ 98-100.

The County Defendants filed a Motion to Dismiss and brief in support on March 28, 2024. ECF Nos. 48 and 49. Plaintiffs filed a response brief on April 26, 2024. ECF No. 51. The County Defendants filed a reply brief on May 10, 2024. ECF No. 52.

The Motion to Dismiss is now ripe for consideration.

**B.    STANDARD OF REVIEW**

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." "[D]etailed pleading is not generally required." Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016). Rather, the rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).

In assessing the sufficiency of a complaint, the court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Ret. Sys. v. Chubb

Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555. Thus, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels and conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice. The complaint therefore "must allege facts suggestive of [the proscribed] conduct" that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s of his claim].")). Id. at 233-34.

## C.    DISCUSSION

### 1.    Standing

The County Defendants argue that Jenna M. lacks standing to bring an equal protection or a retaliation claim on her own behalf. ECF No. 49 at 9. They argue she has no basis to bring a claim that County Defendants failed investigate allegations of abuse of her children as a violation of her own rights. Id.

Plaintiffs argue that Jenna M. possesses standing because she has a "cognizable interest" in this matter. ECF No. 51 at 8.

As an initial note, County Defendants cite only one case for the proposition that Jenna M. lacks standing, Kristy A. v. David B., No. 18-1475, ECF No. 70 at 14, an unpublished decision of this Court. ECF No. 49 at 9. Upon review, this case does not stand for the cited proposition. In fact, it does not discuss the issue of standing at all.[3]

---

[3] Perhaps County Defendants meant to cite Kristy A. as an example of the appropriate manner to bring claims related to a failed investigation of child abuse – but they do not state this point .

Plaintiffs also fall short in their briefing of this issue, merely listing the elements of standing and then conclusory stating that Jenna M. "clearly holds more than cognizable interest in the matter and has claimed an injury as a result of the individual Defendants' constitutionally deficient conduct." ECF No. 51 at 8.

That said, standing is a threshold issue that the Court must consider before it can evaluate the merits of a claim. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998).

Constitutional standing requires: (1) an injury in fact that is concrete and particularized and actual or imminent; (2) a causal connection between the injury alleged and the challenged action of the defendant; and (3) that the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); New Jersey Physicians, Inc. v. President of U.S., 653 F.3d 234, 238 (3d Cir. 2011). "[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." Lujan, 504 U.S. at 563 (quoting Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972)).

While Jenna M. states that she possesses a "cognizable interest" in this matter, this is not necessarily sufficient to establish standing. In general, "[i]njuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing." Howard v. Chester Cnty. Off. of Juv. Prob. & Parole, 365 F. Supp. 3d 562, 571 (E.D. Pa. 2019), aff'd, No. 19-1697, 2019 WL 13131142 (3d Cir. Nov. 27, 2019) (internal citations omitted).

But, as this Court has previously noted, "[t]he parental right to custody, control and nurture of their children is deeply rooted and implicit in the United States' concept of ordered liberty. The Supreme Court repeatedly emphasized the fundamental nature of that parental right."

<u>Tatel v. Mt. Lebanon Sch. Dist.</u>, 637 F. Supp. 3d 295, 313 (W.D. Pa. 2022), <u>clarified on denial of</u>
<u>reconsideration,</u> 675 F. Supp. 3d 551 (W.D. Pa. 2023); <u>Tatel v. Mt. Lebanon Sch. Dist.</u>, No. 22-
837, 2024 WL 4362459, at *24 (W.D. Pa. Sept. 30, 2024). <u>See</u> <u>Troxel v. Granville</u>, 530 U.S. 57
(2000).

In the instant case, the allegations at issue are related to the custody of the minor
Plaintiffs, as evidenced by the allegations that Jenna M. and John V. are presently involved in a
custody disputed in Beaver County. ECF No. 43 ¶ 18. Construing reasonable factual
interferences in favor of Plaintiffs, as the Court must do at the motion to dismiss stage,
presumably the alleged abuse of the minor Plaintiffs occurred when they were in the custody of
their father. Thus, this case involves matters where "the fundamental nature of that parental
right" of custody of children is at issue. <u>Tatel,</u> 637 F. Supp 3d. at 313.

At this early juncture, despite the parties' superficial briefing, it appears that Jenna M.
has standing to pursue her equal protection and retaliation claims. Therefore, it is recommended
that County Defendants' Motion to Dismiss be denied on the basis of standing.

**2.     Constitutional Right to an Investigation of Child Abuse Allegations**

In their Motion to Dismiss, County Defendants also argue that Plaintiffs' equal protection
and retaliation claims are based on the premise that their rights were violated because allegations
of child abuse were not properly investigated. ECF No. 49 at 8. They contend that no
constitutional right to an investigation of child abuse exists. <u>Id.</u>

In their Response Brief, Plaintiffs assert that their claims are not based on a constitutional
right to an investigation, but are based on being treated differently or less favorably than
similarly situated individuals by County Defendants. ECF No. 51 at 7-9. This is a violation of

8

Plaintiffs' constitutional right to equal protection under the law under the Fourteenth Amendment. Id.

In their Reply Brief, County Defendants assert that Plaintiffs' argument implicitly admits that there is no constitutional right to child abuse investigations, which is fatal to their claims. ECF No. 52 at 1-2.

County Defendants are correct that DeShaney v. Winnebago County Dep't of Soc. Services, 489 U.S. 189 (1989), stands for the proposition that the state has no constitutional duty to protect an individual from private violence by performing a child abuse investigation, and the failure to do so does not violate the Fourteenth Amendment. The other cases that County Defendants cite – Fetterman v. Westmoreland Cnty. Childrens Bureau, 681 Fed. App'x 166 (3d. Cir. 2017) and Bryan v. Erie Cnty. Off. of Child. & Youth, (W.D. Pa. Sept. 29, 2006), vacated on other grounds, 293 F. App'x 143 (3d Cir. 2008) – rely on the same proposition for their holding.

However, contrary to County Defendants' assertion, Plaintiffs are not claiming that there is a constitutional right to a child abuse investigation. In the Complaint, Plaintiffs allege that: (1) they were treated differently than other similarly situated individuals; and (2) they were retaliated against because of Jenna M's exercise of her First Amendment rights. ECF No. 43 ¶¶ 76-94. These claims are not based on the premise that the state has a constitutional duty to perform a child abuse investigation. Instead, they are based on the separate and distinct rights of equal protection of the law and against retaliation.

In fact, the United States Supreme Court in DeShaney even noted that "[t]he State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause . . . . But no such argument has been made here." 489 U.S.

9

189, 197, n. 3. As such, the Supreme Court anticipated that an equal protection claim could be brought regarding a child abuse investigation.

Accordingly, it is recommended that County Defendants' Motion to Dismiss be denied on this basis.

### 3.    Equal Protection – Class of One (Count I)

In their Complaint, Jenna M., K.J.V., and K.A.V. allege that County Defendants failed to properly investigate their claims of physical abuse and medical neglect of the minor Plaintiffs and that County Defendants reached the improper conclusion that the claims were unfounded. ECF No. 43 ¶ 77. They further alleged that County Defendants do not fail to do so for similarly situated individuals. Id. ¶ 78. Plaintiffs also claim that "similarly situated individuals are not subjected to such delays in investigations by CYS and such frequent reassignments of caseworkers, as described hereinbefore above." Id. ¶ 83. They argue that no rational basis exists for this treatment, thus establishing an equal protection class of one claim. Id. ¶¶ 78, 83

The County Defendants argue that Plaintiffs fail to identify similarly situated individuals or comparators and that their allegations are merely conclusory statements. ECF No. 49 at 10. Accordingly, County Defendants assert that Plaintiffs' equal protection claim should fail, because the Complaint does not set forth a basis as to how Plaintiffs were treated different than other similarly situated individuals. Id. at 10-11.

Plaintiffs respond that their allegations in the Complaint are sufficient to state a claim. ECF No. 51 at 9.

In their Reply Brief, the County Defendants reiterate that Plaintiffs' allegations are "barebones" and fail to state a claim. ECF No. 52 at 2.

To state an equal protection violation under a class of one theory, a plaintiff "must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). At the motion to dismiss stage, a plaintiff must allege facts sufficient to make plausible the existence of such similarly situated parties. Perano v. Twp. of Tilden, 423 F. App'x 234, 238 (3d Cir. 2011). "[A]n equal-protection challenge must allege more than 'broad generalities' in identifying a comparator" Stradford v. Sec'y Pennsylvania Dep't of Corr., 53 F.4th 67, 74 (3d Cir. 2022). (internal citation omitted). To be "similarly situated," parties must be alike "in all relevant aspects." Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008).

Throughout the Complaint, Plaintiffs make six references to "similarly situated individuals" in Paragraphs 26, 30, 59, 78, 81, and 83. ECF No. 43. None of these paragraphs contain factual allegations regarding the similarly situated individuals with sufficient specificity to "make plausible the existence of such similarly situated parties." Perano, 423 F. App'x at 238.

The United States Court of Appeals for the Third Circuit addressed this requirement of specificity in pleading in Perano.

> [Plaintiff] has simply alleged that he was treated differently from 'other similarly situated residential and commercial developers.' Without more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects. Accordingly, [Plaintiff] has failed to state an Equal Protection claim.

Id. at 238-39. See also Mann v. Brenner, 375 F. App'x 232, 238-39 (3d Cir. 2010) (holding plaintiff did not sufficiently plead a class of one claim, because "[a]lthough he alleges that '[o]ther citizens are not treated in this fashion, particularly the political leaders of the City of York'," [plaintiff] fails to plead that he was treated differently than other similarly situated

11

individuals, that is, other property owners of blighted structures in the City of York"); <u>Mims v. City of New Castle</u>, No. 20-1814, 2022 WL 2789867, at *8 (W.D. Pa. July 15, 2022) ("[Plaintiff's] broad allegation that all rental property owners subject to the Code are similarly situated is uncompelling and does not identify individuals who are alike in all relevant aspects."); <u>Perciavalle v. City of Aliquippa</u>, No. 20-474, 2021 WL 2116258, at *6 (W.D. Pa. May 25, 2021) (holding that the allegation that "other similarly situated individuals employed as law enforcement officers by Defendant Aliquippa who engaged in the same or substantially similar conduct as Plaintiff were not disciplined by Defendant Aliquippa" was insufficient to plausibly establish the existence of similarly situated parties who were treated differently); <u>Warren v. Fisher</u>, No. 10-5343, 2013 WL 1164492, at *9 (D.N.J. Mar. 19, 2013) ("Merely alleging that other mining operations exist within the town lines does not plausibly suggest that those mines are similar in all relevant aspects to [plaintiff], for purposes of the Equal Protection Clause."); <u>Cohen v. Chester Cnty. Dep't of Mental Health/Intell. Disabilities Servs.</u>, No. 15-5285, 2016 WL 3031719, at *9 (E.D. Pa. May 25, 2016) ("While plaintiffs need not specify the names of such individuals or describe in great detail the instances in which defendants treated them more favorably than [plaintiff], plaintiffs do need to show that [she] was treated differently from someone else."); <u>Lattanzo v. Dunbar Twp.</u>, No. 23-407, 2024 WL 1156626, at *7 (W.D. Pa. Mar. 18, 2024) ("The Court finds that Plaintiff must make more than a conclusory allegation that he was treated differently than others similarly situated in order to meet the pleading standards of <u>Iqbal</u>/<u>Twombly</u>."). <u>Compare to</u> <u>Monroe Grocery, Inc. v. United States</u>, No. 17-922, 2019 WL 719747, at *3 (M.D. Pa. Feb. 20, 2019) (denying a motion to dismiss where "Plaintiffs 'allege facts that support an inference that they were similarly situated in all respects, except ownership model (public v. private), to other stores that were not prosecuted . . . .' Specifically, plaintiffs

12

allege that there are other stores accepting food benefits that are similar in size and other attributes, other than ownership type, to the plaintiffs' store. ) (internal citations omitted).

In order to state an equal protection – class of one claim, Plaintiffs must specify the traits of "similarly situated" individuals who were treated in a more favorable manner than themselves. Here, Plaintiffs have not met this burden in their Complaint. Plaintiffs' blanket assertions of the existence of "similarly situated" individuals are conclusory statements and are not precise enough to state a claim.

Accordingly, it is recommended that County Defendants' Motion to Dismiss be granted as to Count I and that Plaintiffs' equal protection – class of one claim be dismissed without prejudice.

### 4.    Retaliation (Count II)

In Count II of the Complaint, Jenna M. alleges that because she complained about County Defendants, they retaliated against her by failing to properly investigate her claims of child abuse and medical neglect. ECF No. 43 ¶¶ 89-90. Jenna M. alleges that County Defendants' conclusions that the child abuse allegations were unfounded were in retaliation for her complaints. Id. ¶ 90. She also alleges that Does' delays and reassignment of caseworkers regarding the medical neglect investigation was also in retaliation for her complaints. Id. ¶ 91.

In their Motion to Dismiss, County Defendants argue that the retaliation allegations lack the required causation for Jenna M. to state a claim. ECF No. 49 at 11. County Defendants assert that Cripe, Stone, and Dymond are alleged to have engaged in the same purported misconduct of failing to investigate child abuse allegations both before and after Jenna M. complained about the same. Id. at 11-12. County Defendants also argue that the alleged delay in the investigation of

medical neglect is not attributed to the County Defendants, as Plaintiff blames an unnamed supervisor. Id. at 13.

In opposing the Motion to Dismiss as to this claim, Jenna M. responds that the argument that the same conduct occurred both before and after her complaints should not defeat her claim. ECF No. 51 at 14. Further, because each report of child abuse contained different allegations of abuse and medical neglect, Defendants could not have acted the same each time. Id. Additionally, only Stone was implicated in the first instance; the other Defendants were not. Id.

An abridged recounting of the timeline of events (as set forth in the Complaint) is helpful in analyzing these arguments.

Jenna M. made her first child abuse report on August 25, 2022. Id. ¶ 22. Stone investigated the report and initially made a finding of abuse, but then changed her finding to unfounded. Jenna M. complained of Stone's conduct to Dymond on September 27, 2022. Id. ¶ 24-25.

Jenna M. alleges that "[t]hroughout the next several months, . . . Jenna M. continued to make reports of abuse of the minor Plaintiffs by John V. and/or family members of John V. . . . Jenna M. also sent pictures of bruising found on . . . K.J.V. and K.A.V. to Defendants Stone, Dymond, Cripe, and/or CYS that did not result in investigations being conducted." Id. ¶ 29.[4]

Jenna M. next made a child abuse report on October 30, 2022 to CYS and/or Cripe. Id. ¶ 32. Cripe concluded the allegations were unfounded. Id. ¶ 34. Jenna M. made another allegation of child abuse on November 10, 2020 to CYS and/or Cripe. Id. ¶ 36. Around this time, Jenna M. made complaints about Stone, Cripe, and Dymond to CYS and Pennsylvania Child

---

[4] It is unclear to the Court if these reports are those specifically detailed in subsequent Complaint paragraphs, or if they involve separate allegations. Construing the Complaint in the manner most favorable to Plaintiff, this Court reads Paragraph 29 as referencing additional reports not specified elsewhere in the Complaint.

Welfare. Id. ¶ 38. Cripe and/or CYS concluded the November 10, 2020 allegation was unfounded. Id. ¶ 39.

Jenna M. made an allegation of child abuse on February 17, 2023 to CYS and/or Cripe. Id. ¶ 42. Cripe and/or CYS did not perform any investigation of the abuse. Id. ¶ 44.

Jenna M. made several reports of medical neglect to CYS, Stone, Cripe, and Dymond before March 2023. Id. ¶ 48. CYS only began investigating medical neglect in June 2023. Id. ¶ 52. Since then, four different caseworkers were assigned to the investigation over six months. Id. ¶ 53.

In order to state a claim of retaliation under the First Amendment, a plaintiff must show: "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) citing Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). There are three ways a plaintiff can establish causation for a First Amendment retaliation claim: (1) an "unusually suggestive temporal proximity" between the speech and the alleged retaliatory conduct; (2) a "pattern of antagonism coupled with timing"; or (3) that the "record as a whole" permits the trier of fact to infer causation. Lauren W., 480 F.3d at 267. A plaintiff must also plead that the "constitutionally protected conduct was a substantial or motivating factor" for the retaliatory conduct. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).

Jenna M. cites Sposto v. Borough of Dickson City, No. 05-980, 2005 WL 3307333, at *3 (M.D. Pa. Dec. 6, 2005) for the proposition that "retaliation and causation requirements 'present questions for the fact finder and are not subject to review' at [the motion to dismiss] stage." ECF

No. 51 at 13. While Plaintiff is correct that the district court in <u>Sposto</u> stated this dictum, the district court also quoted <u>Baldassare v. State of N.J.</u>, 250 F.3d 188, 195 (3d Cir. 2001) for the statement. The procedural posture of <u>Baldassare</u> was at the summary judgment stage, not the motion to dismiss stage, as is the case here. <u>Id.</u> at 192. The Third Circuit in <u>Baldassare</u> was opining on whether questions of fact were present in that case at the summary judgment juncture – not whether the plaintiff had detailed sufficient allegations to state a claim. The other cases Jenna M. cites also have procedure postures inapposite to the instant case.[5] Accordingly, Jenna M.'s statement regarding the proper scope of the Court's of review of her retaliation claim is incorrect.

At this initial stage, the Court must accept Plaintiffs' factual allegations as true and draw reasonable inferences regarding causation in her favor. <u>Conard v. Pennsylvania State Police</u>, 902 F.3d 178, 184 (3d Cir. 2018). Plaintiffs must only allege <u>some</u> evidence, direct or circumstantial, of this element that is "enough to raise a right to relief above the speculative level." <u>Falco v. Zimmer</u>, 767 F. App'x 288, 310 (3d Cir. 2019) (quoting <u>Twombly</u>, 550 U.S. at 555). While this standard is somewhat deferential to Plaintiffs, contrary to Plaintiffs' arguments, the causation requirements are still subject to the Court's review. The Third Circuit has also cautioned courts to "be diligent in enforcing these causation requirements [in Section 1983 First Amendment retaliation cases,] because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate." <u>Lauren W.</u>, 480 F.3d at 267.

With these somewhat opposing standards in mind, the Third Circuit's opinion in <u>Lasche v. New Jersey</u>, No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022), is instructive. In <u>Lasche</u>,

---

[5] <u>Williams Watters v. City of Philadelphia</u>, 55 F.3d 886 (3d Cir. 1995) concerned a post-trial judgment as a matter of law ruling. <u>Johnson v. Lincoln Univ. of Com. Sys. of Higher Educ.</u>, 776 F.2d 443 (3d Cir. 1985) concerned a summary judgment ruling.

two foster parents with religious views against same-sex marriage had their foster child removed and their foster license suspended. Id. at *3. In October and December 2017, the Lasches were informed that they were under consideration to adopt their foster children. Id. at *1. But after that, the Lasches were informed that a same-sex couple was interested in adopting the children. Id. A defendant social worker questioned a foster child whether she would change her own religious views about same-sex couples. Id. A hearing was held on June 4, 2018, where the same-sex couple indicated that they were no longer interested in adopting the children Id. at *2. A judge also found the children needed psychiatric evaluations. Id.

> Within a month of the same-sex couple's decision not to adopt the foster children [in June 2018], the individual defendants failed to provide the statutorily required notice of a family court hearing, and they obtained a court order at that hearing to remove Foster Child 1 from the Lasches. That timing is unusually suggestive. The DCPP's decision to suspend the Lasches' foster parent license [in October 2018] is further removed temporally. But in light of the prior pattern of antagonism regarding the [June 2018] family court hearing and the removal of Foster Child 1 [in July 2018], the timing of those events is still suggestive of retaliation.

Id. at *5. These facts were sufficient to survive a motion to dismiss. Id.

Using the Third Circuit decision in Lasches as guidance, this Court finds that at the motion to dismiss stage, Jenna M. has sufficiently pled the causation element of her retaliation claim. As in Lasches, Jenna M. has alleged a pattern of antagonism. Taking all reasonable factual inferences in the light most favorable to the Plaintiff, as the Court must, Jenna M. has pleaded sufficient facts to support her allegations that her complaints could have been a substantial or motivating factor in County Defendants' alleged conduct.

Throughout their brief, County Defendants also question whether Jenna M.'s complaints are protected activity, however, they do not fully brief this argument for the Court's consideration. ECF No. 48 at 12.

Accordingly, it is recommended that the Motion to Dismiss as to Count II be denied.

5.    **Retaliation – Familial Affiliation (Count III)**

The County Defendants argue that Count III, the minor Plaintiffs' retaliation claim, should be dismissed, because there are no allegations that any individual Defendant interfered with the family structure. ECF No. 49 at 13. In their Response Brief, the minor Plaintiffs withdraw this claim. ECF No. 51 at 2, n. 1. Accordingly, it is recommended that County Defendants' Motion to Dismiss be granted as to Count III.

D.    **CONCLUSION**

For the reasons set forth herein, it is respectfully recommended that Motion to Dismiss filed by Defendants Stone, Dymond, Cripe, and Collings, ECF No. 48, be granted in part and denied in part. Specifically, it is recommended that the Motion be granted as to Count I and III and be denied as to Count II.

However, the United States Court of Appeals for the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Plaintiffs may be in possession of additional facts to support their allegations. Therefore, it is recommended that Plaintiffs be afforded an opportunity to file a Third Amended Complaint to correct the substantial pleading deficiencies identified in this Report. The Court should further instruct Plaintiffs that a Third Amended Complaint must be filed within thirty days, must fully allege every claim they wish to pursue against all parties, and must be a pleading that stands by itself without reference to the original or amended complaint. Young v. Minnick, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule

established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: October 31, 2024                          Respectfully submitted,


                                                 MAUREEN P. KELLY
                                                 UNITED STATES MAGISTRATE JUDGE


cc:    Honorable J. Nicholas Ranjan
       United States District Judge

       All counsel of record via CM/ECF.